## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CASEY SPRACKLIN and SHERRY SPRACKLIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-07-0023-F |
| CITY OF BLACKWELL, | ) ) | |
| Defendant. | ) ) | |

## ORDER

"Defendant City of Blackwell's Motion for Summary Judgment," filed September 6, 2007, is before the court.  (Doc. no. 35.)  Plaintiff has responded, the city has replied, and the motion is ready for determination.

### I.  Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the

moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

## II. <u>Discussion</u>

Plaintiffs are Casey Spracklin and Sherry Spracklin.  Defendant is the City of Blackwell (the city).  This action primarily arises out of events involving a sewage back-up on the premises of plaintiffs' non-residential building located in downtown Blackwell, Oklahoma,  and the City of Blackwell's termination of electrical services for the same property.  Various state law tort claims, and state law constitutional claims, are alleged in counts one through three of the petition.[1]  Plaintiffs' federal claims are alleged in count four.  Plaintiffs' federal claims charge violations of the Fourteenth Amendment *via* 28 U.S.C. § 1983.  Specifically, the federal claims consist of a procedural due process claim, a substantive due process claim, and an equal protection claim, all arising out of the city's termination (and continuing non-provision) of electrical service to the plaintiffs' building.[2]

Defendant's motion challenges all claims.  One of defendant's arguments is that it is entitled to summary judgment on the federal claims, and that the remaining state

---

[1]The petition was removed from state court.

[2]Defendant's properly supported motion challenges all of plaintiffs' federal claims.  In response, the only federal theories of liability which plaintiffs' brief argues (at least in any detail) are viable are the federal claims described in the body of this order.  (See doc. no. 41, pp. 21-29, propositions III, IV.)  Thus, to the extent that any other federal claims were originally alleged -- such as federal claims based on the Fourth Amendment, federal claims alleging harassment (by means other than termination of electrical service), or federal claims based on the sewage back-up described in count one -- the court finds that such claims have been abandoned and they are deemed voluntarily dismissed on that basis.  Alternatively, if plaintiffs  intended to press these other federal claims, the court finds that such claims are barred by a two-year limitations period, or that they are otherwise not viable because plaintiffs have not identified record evidence to support them.  In that event, defendant is entitled to summary judgment with respect to any such federal claims, *i.e.* any federal claims not addressed in the body of this order.

law claims should be dismissed because the court should decline to exercise its supplemental jurisdiction. Accordingly, this order begins with analysis of the viability of plaintiffs' federal claims.

## A. Federal Procedural Due Process Claim

Plaintiffs contend the city terminated electrical services to plaintiffs' building without due process of law, because service was discontinued without a hearing and without an opportunity for plaintiffs to dispute the reasons given by the city for the termination. (*See*, *e.g.*, doc. no. 41, p. 23.) In support of this argument, plaintiffs rely primarily on Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1 (1978), a case which arose in circumstances very different from the circumstances of this action.

In Memphis Light, a final notice which was included with the plaintiffs' utility bills for electric, gas and water services, stated simply that payment was overdue and that service would be discontinued if payment was not made by a certain date. *Id.* at 11. There were also some fliers included with some of the bills, giving information about where customers could go for credit counseling and stating that if there was a dispute about payment customers could bring their bill to a certain address or call. *Id.* The Supreme Court held that the notification procedure was adequate to apprise the plaintiffs of the threat of termination of services, but that it was not reasonably calculated to inform them of the availability of an opportunity to present their objections to their bills. *Id.*

In Memphis Light, the Court stated that, in such circumstances, the purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Id.* The Court stated that "Notice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." *Id.* Quoting Wolff v.

McDonnell, 418 U.S. 539, 557-58 (1974) (a case challenging administrative procedures for reducing good-time credits in a Nebraska penal institution), the Memphis Light Court also noted that the Supreme Court "has held that 'some kind of hearing is required at some time before a person is finally deprived of his property interests.'"  Memphis Light, 436 U.S. at 11.

Unlike Memphis Light, the instant case does not involve termination of electrical service to a residence for lack of payment.  Although plaintiffs dispute the correctness of the city's stated reasons for terminating service to their building, there is no dispute that the city's stated reason for terminating service was the possibility of major fire code (or other code) violations based on concerns about the building's structural deficiencies.  With regard to the adequacy of notice which plaintiffs received prior to the termination of electrical service to the building, it is undisputed that plaintiffs received a letter dated August 8, 2005, from Jim Inmon, fire marshal of the City of Blackwell.  (Doc. no. 36, Ex. "C-3.")  The letter indicated that the city was concerned about several ordinance violations with respect to the plaintiffs' building.  The letter stated:  "The City wants to work with you to correct these deficiencies as quickly as possible."

With respect to specific concerns regarding possible fire code violations, the August 8 letter further stated as follows.

> It appears that there are violations of the fire code at this building. The City is requesting that you permit an inspection of the interior by the Fire Marshal.  Of course, you are welcome to be present and to have anyone there you choose.  If you desire, the City will work with you to obtain the services of an independent, third party inspector, and will split the cost of that inspection with you.

> * * *

> You are receiving electricity at the building from the City.  In order for the City to continue your service, we must have assurance that

there are no major fire code or other code violations.  If we are unable to conduct an inspection of the interior within the next fifteen days, all your utilities will be terminated.

Please call me at your earliest convenience to make arrangements for the inspection.  My number is 363-0300.

(Doc. no. 36, Ex. "C-3.")

Thus, regardless of whether the city's concerns would have been borne out, as a factual matter, by an inspection of the property (a matter which need not be addressed at this point), there is no dispute that the city gave written notice to the plaintiffs that possible major fire code violations were of concern to the city with respect to the plaintiffs' building; that the notice stated arrangements could be made for the plaintiffs to be present at the building during inspections by the city to investigate the city's concerns; that the notice told plaintiffs who to contact to make arrangements for an inspection; that the notice gave plaintiffs 15 days in which the inspections could occur before service would be cut off; and that the notice told plaintiffs that unless the city's need to inspect the building was accommodated within that time period, electrical service would be terminated.

Plaintiffs have not cited any authorities to suggest that the same type of procedural due process notice requirements which applied in <u>Memphis Light</u>, where services were terminated for non-payment, apply here, where termination is threatened due to possible fire code violations.  The possibility of fire code violations raises public safety issues which were not of concern in <u>Memphis Light</u>.  The two situations are distinguishable.  When the stated ground for termination is the possibility of major fire code violations, the court rejects plaintiffs' contention that procedural due process necessarily requires a hearing or an opportunity for plaintiffs to dispute the reasons given for the termination of service before electrical services may be terminated.

This determination does not necessarily mean that no due process protections apply in these circumstances, however, as some version of the <u>Memphis Light</u> requirements, tailored to the exigencies of the situation, may apply.  If so, or even if the full requirements of <u>Memphis Light</u> apply, then the court finds that Mr. Inmon's August 8 letter, the contents of which are undisputed, meets those requirements.  The August letter advises plaintiffs of the availability of a procedure for protesting the city's proposed termination of electrical services for the building in question.  The described procedure was that, upon contact by the plaintiffs, the city would schedule and conduct an on-site investigation within the next 15 days, and that the owners could be present for that inspection.  The letter was reasonably calculated to inform the Spracklins of the availability of their opportunity to alleviate the city's concerns regarding fire code violations, by rebutting the factual basis for those concerns, or otherwise.  Moreover, it is undisputed that the letter conveyed the information it was intended to convey; there is no dispute that the letter was received and understood.

Faced with these facts, much of plaintiffs' defense of the viability of their procedural due process claim appears to be based on their arguments that the city failed to respond appropriately to contact from Mr. Spracklin.  Mr. Spracklin sent the city a letter, dated August 18, 2005, in which Mr. Spracklin stated that he disputed that there were any ordinance violations until such time as he and his attorneys could obtain a professional evaluation.  (Doc. no. 36, Ex. "C-4.")  The city responded to that letter by writing Mr. Spracklin, advising him that the city's interpretation of his position was that he was not willing to allow the inspection requested in the city's prior letter.  (Doc. no. 41, Ex. 8.)  The city's letter further stated that if Mr. Spracklin wished to allow an inspection, he must let the city know by the close of business on August 25, 2005.  (Doc. no. 41, Ex. 8.)

Mr. Spracklin also complains about the fact (which the court takes as true for purposes of this motion) that the city failed to respond to a one-sentence note, sent or given by Mr. Spracklin to the city, dated September 28, 2005.  (Doc. no. 41, Ex. 9.) The note stated that Mr. Spracklin  would be available on October 6, or thereafter, to meet at the building.  The fact that the city ignored the note is immaterial because it is undisputed that in the weeks leading up to this note, the city gave Mr. Spracklin an opportunity (the city says several opportunities) to meet regarding the city's concerns, but Mr. Spracklin did not take advantage of the opportunity.  For example, Mr. Spracklin testified at his deposition that he and his attorneys denied the city entrance to his building for inspection purposes.  He testified:  "We denied the entrance of the inspection for the information they gave me. ... I didn't want to create problems.  I didn't have -- the building insides didn't have a nature to where it needed, you know, inspected.  I thought they were up to something."  (Doc. no. 41, Ex. 1 at p. 22; *see also*, doc. no. 41, p. 16, admitting Mr. Spracklin initially denied the city the ability to inspect his building because he was concerned about the actions the city would take based on what he describes as the city's previous harassment.)  Plaintiffs also offer no evidence to refute the city's evidence that a variety of appointments to meet with the city were repeatedly cancelled by Mr. Spracklin.  (Doc. no. 36, pp. 8-9, and aff. at Ex. "C.")  Mr. Spracklin "recalls cancelling the inspections on one occasion for a doctor's appointment."  (Doc. no. 41, p. 9.)

Thus, the record evidence is undisputed that Mr. Spracklin initially denied the city entrance into the building, that at least one appointment with Mr. Spracklin for an inspection of the building was cancelled by Mr. Spracklin, and that all of this occurred prior to the time Mr. Spracklin sent the belated September 28 note (offering to meet October 6 or after).  Based on these undisputed facts, the court finds that the city did not violate procedural due process when, weeks after the fire marshal's initial

letter to the plaintiff, the city followed through and terminated electrical service to the building.  (See letter from Mr. Inmon dated August 8, 2005, doc. no. 36, Ex. "C-3," and memo re "code enforcement" dated September 30, 2005, stating service to be terminated that date for the stated reason of safety concerns unable to be addressed. Doc. no. 36, Ex. "C-6.")  Procedural due process cannot hold the city to a standard which would require a hearing in every case, even when public safety issues are potentially concerned, and even when the owner of the property is given an opportunity to discuss the city's concerns at an on-site investigation but the owner does not take advantage of that opportunity.  Any other rule would allow owners to play a cat-and-mouse game with the city, making prompt investigation of potentially serious fire code violations impossible and thwarting the city's ability to protect the public's safety by promptly discontinuing electrical service in a potentially dangerous situation.

In short, to the extent that any of the requirements of <u>Memphis Light</u> are applicable in this case, no such procedural due process requirements were violated here.  The city gave plaintiffs notice in a manner reasonably calculated to advise them of a procedure for contesting the accuracy of, and basis for, the city's stated concerns. It is undisputed that plaintiffs knew about this opportunity, but that, for whatever reason, they did not avail themselves of it.  There has been no showing of a violation of Fourteenth Amendment procedural due process, and the city is entitled to summary judgment in its favor on that claim.[3]

---

[3]Of course, plaintiff need not actually "show" or "prove" or "establish" anything to defeat defendants' motions.  Plaintiff must merely demonstrate the existence of a genuine issue of material fact.  Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage.  <u>Goodwin v. General Motors Corporation</u>, 275 F.3d 1005, 1011 at n.7 (10th Cir. 2002)(abrogated on other grounds.).

### B. <u>Federal Substantive Due Process Claim</u>

Some courts have held that there is not necessarily a federal substantive due process claim for termination of utility services in all circumstances.  *See*, <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 412 (3d Cir. 1988)(once a municipality establishes a utility and a citizen's expectation of receiving water and sewer services, the interest rises to the level of a property interest cognizable under the Due Process Clause, and that expectation is measured under the Fourteenth Amendment's procedural protections; this does not necessarily transform the expectation into a substantive guarantee of service in any circumstance; for example, conditioning water and sewer service on payment of past due charges for services rendered to a residence does not raise a question of deprivation of substantive due process).  Nevertheless, to the extent that substantive due process rights attach when electrical service is terminated for the stated reason that there are concerns about fire code violations, it is clear that to present a viable claim under the Fourteenth Amendment, any deprivation of the plaintiffs' property right must have been arbitrary.  <u>Clark v. City of Draper</u>, 168 F.3d 1185, 1190 (10th Cir. 1999).  Any substantive due process claim must represent more than an ordinary tort to be actionable under § 1983, and it must shock the conscience.  *Id*.  To reach that level of conduct, the government action must be deliberate rather than merely negligent.  *Id*.

Although plaintiffs dispute the correctness and seriousness of the city's concerns about potential structural problems and fire code violations, there is no dispute that external inspections were conducted by city staff prior to the issuance of the August 8 letter from Mr. Inmon.  There is also no dispute that, prior to this letter, there had been external inspections by city staff in February of 2004, and in August of 2005.  The undisputed evidence shows that these inspections found at least some problems with the structure.  For example, defendant's evidence (photographs which

plaintiffs state are "black and white and very hard to see") clearly shows stalactites hanging from the ceilings (as photographed through the windows),  missing mortar, and gaps in the brick facade.   (Doc. no. 36, Ex. "C-11.")   Plaintiffs make the underwhelming statements that:  "the building is not going to suddenly fall apart any time," and that their own pictures show "the building is not as deteriorated as Blackwell would like this Court to believe."  (Doc. no. 41, p. 8.)  Plaintiffs do not dispute, however, defendant's evidence that during the August 2, 2005 inspection, the city observed at least one exterior electrical outlet with no cover plate and with wiring exposed.  (Doc. no. 36, p. 5, and aff. at Ex. "B," p. 4.)  With respect to the inspection in February of 2004, plaintiffs do not present any evidence disputing defendant's observation that water (or other liquid) had dripped out of at least one upstairs window, had dripped onto the sidewalk, and had frozen in that manner.  (Doc. no. 36, p. 3, and aff. at Ex. "B," p. 2.)

Furthermore, plaintiffs' own arguments admit there were some problems with the building.  To cite just a few examples based on plaintiffs' briefing:  plaintiffs do not dispute that some bricks fell from the structure during a storm; plaintiffs admit the storm destroyed a carport on the roof of the building and spread wood planks in every direction; plaintiffs admit the building is 100 years old; plaintiffs state that the roof was "not significantly cracked"; and finally, regardless of whose fault it was, there is no dispute that there was a back-up of sewage in the basement which Mr. Spracklin contends was two feet deep and took him three weeks to pump out. (Doc. no. 41, pp. 4, 6, 7, 13, 15; see also Mr. Spracklin's affidavit at doc. no. 41, Ex. "5.")

In these circumstances, the court finds that plaintiffs have identified no evidence to show that the city's conduct was arbitrary.  There also is no evidence of conduct by the city that shocks the conscience.  Assuming substantive due process law protects plaintiffs' interest in continued electrical service to their non-residential

building when concerns about potential fire code violations have been raised by the fire marshal, the court finds no evidence to support a claim that the city's actions violated any substantive due process rights here.  Accordingly, the city is entitled to summary judgment in its favor on plaintiffs' substantive due process claim.

### C.  Federal Equal Protection Claim

A federal equal protection claim may be based on a class of one, when a plaintiff shows that he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir. 2001).  The plaintiff must show that the action taken by the state was a spiteful effort to "get" him, for reasons wholly unrelated to any legitimate state objective.  *Id*.

Plaintiffs argue that the city was out to "get" Mr. Spracklin, and that the city wanted Mr. Spracklin out of the building.  As previously discussed, however, the city has presented undisputed evidence which shows that there were at least some problems with the building and that the city communicated its concerns regarding potential code violations to the plaintiffs.  The city has also presented evidence that it took steps to enforce code requirements with other owners of other buildings.  (Doc. no. 36, p. 11; affidavit of Karns attached as Ex. "A.")  In an effort to dispute this evidence, plaintiffs submit pictures of other buildings, along with conclusory, hearsay notes (handwritten in the margins of these pictures) stating, for example, that such other buildings "never had inspection," or "has electric power."  (Doc. no. 41, Ex. 19.) The author of these notes has not been shown to be a witness with first-hand knowledge of whether these other buildings had inspections, whether these buildings have electric power, or whether the city took steps to enforce or correct possible code violations with the owners of these buildings.

-11-

In short, plaintiffs have identified no admissible record evidence to show that the pictured buildings, or any other buildings, had problems similar to the types of problems observed by the city in connection with the Spracklins' building but that such problems were handled differently by the city.  There also has been no showing that the city lacked a rational basis for its conduct when it terminated electrical service to plaintiffs' building.  The city's legitimate objective was public safety, an objective served by active enforcement of fire codes.  Leaving aside other disputed problems with the building, the city's termination of electrical service to a building with the types of problems admitted to by the plaintiffs is conduct which serves public safety.  There has been no showing that any conduct by the city was a spiteful effort to "get" the plaintiffs for reasons wholly unrelated to any legitimate state objective.  Accordingly, the city is entitled to summary judgment on plaintiffs' equal protection claim.

### D.  Supplemental Jurisdiction over State Law Claims

The result of this order is that all federal claims have been summarily adjudicated in favor of the defendants.  The court must, therefore, determine whether to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. §1367(c)(3).

Judicial economy, fairness, convenience, and comity are all considerations which guide a district court's decision regarding whether to defer to a state court or retain and dispose of state law claims.  United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).  The Tenth Circuit has held that when federal claims are resolved before trial, the district court should usually decline to exercise jurisdiction over the remaining state law claims and allow the plaintiff to pursue them in state court.  Smith v. City of Enid By and Through Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).

Most of the claims alleged in this action are state law claims.  The petition alleges a variety of state tort claims under the Oklahoma Governmental Tort Claims Act, as well as state constitutional claims.  These state law claims arise out of the city's termination of electrical service to the plaintiffs' building, and also out of plaintiffs' problems with an alleged sewage back-up in their building; the latter event has little connection with the federal claims addressed in this order. In these circumstances, having disposed of the federal claims prior to trial, and finding no consideration which causes the court to conclude that it should retain jurisdiction over the state law claims, the court, in the exercise of its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims.

### III.  Conclusion

To the extent that defendant seeks judgment in its favor on all federal claims alleged in this action, defendant's motion for summary judgment is **GRANTED**. Plaintiffs' state law claims (Counts 1, 2 and 3) are **REMANDED** to the District Court of Kay County, State of Oklahoma, the court from which this action was removed. Defendant's motion for summary judgment continues to pend with respect to the state law claims, to be decided by the state court.  Nothing stated in this order is intended to prejudice the state court's consideration of the state law claims.

Dated this 7th day of November, 2007.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0023p010(pub).wpd